# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | **CRIMINAL ACTION** |
| | : | **NO. 04-CR-647-1** |
| v. | : | |
| | : | **CIVIL ACTION** |
| ENRIQUE IGLESIAS, | : | **NO. 10-CV-0378** |
| Defendant | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                      **December      , 2010**

Before the Court is Enrique Iglesias's *pro se* Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2255. For the reasons that follow, I will deny the motion in its

entirety. Mr. Iglesias's petition is timely filed. The Third Circuit Court of Appeals

denied a direct appeal of his conviction and sentence by memorandum on July 25, 2008.

The Third Circuit denied his petition for rehearing of that decision on February 13, 2009.

His judgment became final on that date, and he filed the instant petition for writ of habeas

corpus on February 1, 2010, within the applicable one year statute of limitations. <u>See</u>

<u>United States v. Wall</u>, 456 F.3d 316, 319 (3d Cir. 2006).

## I.    FACTS [1]

On August 19, 2004, federal and state law enforcement officials executed a search

---

[1] The facts the parties do not dispute will be taken from the record and from the Third
Circuit's opinion affirming the order of judgment in this case, <u>United States v. Iglesias</u>, 535 F.3d
150 (3d Cir. 2008).

warrant at the home of Elliot Shisler, where they seized a small quantity of methamphetamine.  When questioned by authorities, Shisler agreed to provide information about Enrique Iglesias, who he identified as his supplier.  As officers were transporting Shisler from his home, he pointed out the location of Iglesias's residence on Red Lion Road in Philadelphia.  He later agreed to call Iglesias to arrange a purchase of methamphetamine.  With police listening to and recording the call, Shisler asked to come to Iglesias's home, and Iglesias consented.  Based on that call and the information Shisler provided, police obtained a warrant to search Iglesias's home.

Officials executed the warrant on the evening of August 19, 2004.  Inside Iglesias's home, they found methamphetamine in plastic bags on a bed, in a purse, concealed in a can of hair spray, and in the closet of the master bedroom.  They also found various identification cards belonging to Iglesias.  In an office, they found more identification belonging to Iglesias, bags of methamphetamine, an unloaded 9 millimeter Taurus semi-automatic pistol and a loaded magazine, and hundreds of empty ziploc bags.  In the kitchen, they found a coffee can containing more plastic bags filled with methamphetamine.  The total amount of methamphetamine discovered in the apartment was 156 grams.  Police also discovered the keys to a Volvo parked behind the apartment.  Upon searching the trunk of the Volvo, they found a cooler containing three bags with a total of 1146 grams of methamphetamine.

On October 6, 2004, Iglesias was indicted in the Eastern District of Pennsylvania

for conspiracy to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Two); possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Three); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Four).  See Docket No. 04-647-01, Document No. 1.

Prior to trial, Mr. Iglesias filed a motion to suppress the evidence obtained in the search of his home, arguing that police coerced Shisler into making the recorded telephone call, that they included false or misleading information in the affidavit of probable cause, that they therefore lacked probable cause to search his home, and that they entered the house without first knocking and announcing their presence.  See Doc. No. 32.  This court conducted a suppression hearing on August 9, 2005, and subsequently denied the motion to suppress.  See Doc. No. 50.  At the suppression hearing, Shisler admitted to purchasing methamphetamine from Iglesias both in Iglesias's home and in his own and testified extensively about his interactions with police on the day he was arrested.

At trial, which began on August 10, 2005, Mr. Iglesias was represented by Guy Sciolla, Esq.  At trial, Shisler testified as a government witness.  Although he admitted

having methamphetamine and a gun when police stopped him on August 19, 2004, and being a methamphetamine dealer, he refused to identify his supplier. Over defense counsel's objection, Shisler was impeached with his testimony from the suppression hearing. On August 16, 2005, the jury found Iglesias guilty on all charges through delivery of a verdict by special interrogatory. Iglesias filed a motion for judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure on August 23, 2005. See Doc. No. 56. This court denied the motion on December 29, 2005. See Doc. No. 63.

Iglesias was sentenced on October 11, 2006. This court imposed a sentence of 360 months imprisonment on Counts One and Two, to be served concurrently; 120 months on Count Four to be served concurrently with the sentence for Counts One and Two; and 60 months on Count Three, to be served consecutively to the sentences for Counts One, Two, and Four. This court also imposed concurrent supervised release terms of five years and three years, a $5,000 fine, and a $400 special assessment.

Mr. Iglesias, represented by newly obtained counsel Cheryl Sturm, appealed his conviction in the Third Circuit Court of Appeals. He made the following arguments concerning matters pertaining to trial: that insufficient evidence was presented to convict him; that this court abused its discretion in admitting Shisler's suppression hearing testimony; and that this court's jury instructions were constructively amended to conform to the proof at trial in violation of the Fifth Amendment. He also claimed that, at

sentencing, this court relied on materially inaccurate information by including the amount of drugs intended for Mr. Iglesias's personal use in computing the appropriate guideline range; that it failed to employ the categorical approach in considering his prior state court offenses; and that it failed to give meaningful consideration to sentencing disparities. Finally, Mr. Iglesias claimed his trial counsel rendered ineffective assistance.

The Third Circuit denied his appeal in its entirety, affirming Iglesias's conviction and sentence. It considered at length his claim that the evidence offered at trial was insufficient to convict him; his claim that this court erred in admitting the suppression hearing testimony of Mr. Shisler to impeach him; and his argument that this court should have excluded the drugs intended for personal use in computing his sentencing guidelines. See Iglesias, 535 F.3d 150. It dismissed all other arguments as "neither meritorious nor worthy of extended discussion." Id. at 161.


## II.    STANDARD OF REVIEW

Mr. Iglesias has filed this motion *pro se*. *Pro se* pleadings are traditionally construed quite liberally. However, a *pro se* petitioner is not excused from the duty to prove a "set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594 (1972). A prisoner in custody may move the sentencing Court to "vacate, set aside, or correct" a sentence imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Section 2255 permits

habeas relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (citing United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235 (1979)).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Conversely, a court may dismiss a Section 2255 motion where the records and files show conclusively that the movant is not entitled to relief. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604 (1998). Therefore, a habeas petitioner is procedurally barred from asserting a claim in a § 2255 petition that he could have, but failed to raise in his direct appeal. See United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584 (1982). Once claims have been procedurally defaulted, the petitioner can only overcome the procedural bar by showing "cause" for the default and "actual prejudice" from the alleged error or that he is "actually innocent." Id. at 167. "In this context, 'cause' consists of 'something external to the petitioner, something that cannot be fairly attributable to him,' and 'prejudice' means that the alleged error 'worked to [the petitioner's] actual and substantial disadvantage.'" United

States v. Rodriguez, 153 F. Supp. 2d 590, 594 (E.D.Pa. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546 (1991) and Frady, 456 U.S. at 170, 102 S.Ct. 1584).

Importantly, however, a defendant need not demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel. See United States v. DeRewal, 10 F.3d 100, 104 (3d Cir.1993). Ineffective assistance of counsel claims are generally not considered on direct appeal and are best brought by the defendant in a collateral attack such as this. United States v. Thornton, 327 F.3d 268, 272 (3d Cir. 2003). Therefore, claims properly dismissed as procedurally defaulted because they were not raised on direct appeal are appropriately considered in connection with an ineffective assistance of counsel claim. See DeRewal, 10 F.3d at 104-05. A defendant seeking relief under § 2255 on an ineffective assistance of counsel claim must show that: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) the defendant suffered prejudice as a result - meaning, but for counsel's deficient performance, the result of the proceeding would have been different, i.e. the deficiency deprived the defendant of "a trial whose result is reliable." Id.; Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

A habeas petitioner is also barred from asserting, in a section 2255 petition, "questions which were raised and considered on direct appeal." DeRewal, 10 F.3d at 105

n.4; see also United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979). Moreover,

"[o]nce a legal argument has been litigated and decided adversely to a criminal defendant

at his trial and on direct appeal, it is within the discretion of the district court to decline to

reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. §

2255." United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981); see also United

States v. Parker, Civ.A. No. 03-6926, Crim.A. No. 00-315, 2006 WL 759689 at *2

(E.D.Pa. Mar. 23, 2006).

## III.   DISCUSSION

### A.   Claims Raised and Considered on Direct Appeal Will Not Be Reconsidered

A number of claims Mr. Iglesias raises in the instant petition were raised in his

direct appeal and ruled upon by the Third Circuit. Because § 2255 "may not be employed

to relitigate questions which were raised and considered on direct appeal," this Court may

decline to revisit all issues raised in Mr. Iglesias's appeal of his conviction and

sentencing. DeRewal, 10 F.3d at 105 n. 4; Orejuela, 639 F.2d at 1057. Therefore, the

following grounds for his motion will not be considered here:

- Ground Three: Violation of Federal Rule of Evidence 801 to Impeach Eliott Shisler;[2]

- Ground Four, Part Two: Violation of the Sixth Amendment right to

_____

[2] See Iglesias, 535 F.3d at 157-60.

confront witnesses and reliance on inaccurate information at sentencing;[3]

- Ground Nine: Constructive Amendment of the Indictment;[4]

-  Ground Eleven, Ground Twelve Part Two: Insufficient Evidence to Convict;[5]

- Ground Fourteen, Part One: Failure to Consider Sentencing Disparity;[6]

- Ground Fifteen: Use of Materially Inaccurate Facts at Sentencing[7]

---

[3] Mr. Iglesias claims that the use of a firearm expert's testimony at trial prejudiced him because it caused this Court to rely on inaccurate information about the Taurus pistol found in his possession in sentencing him. This Court stated at sentencing that "somebody who is dealing methamphetamine on a regular basis out of a residence where there is a loaded weapon . . . presents a significant threat of harm or violence to the community." Mr. Shisler raised this particular argument on his direct appeal and it was dismissed by the Third Circuit, which ruled that "[t]he District Court's statement that the Taurus was 'loaded' had no material effect on the sentence Iglesias received." Iglesias, 535 F.3d at 161 n. 5.

[4] Iglesias, 535 F.3d at 161 n. 4 ("The indictment was not constructively amended because the District Court correctly told the jury that the amount of methamphetamine seized was not an essential element of the offense. Thus, the government's allegation of a specific amount in the indictment properly was disregarded as surplusage.").

[5] See Iglesias 535 F.3d 150 at 155-157. In Part Two of Ground Twelve of his petition, Iglesias argues that "[t]he facts of this case do not trigger or support federal jurisdiction under the commerce clause." Doc. No. 102, Pet'r's Mem., 84. He claims first that "the facts and evidence of this case show that John Glazemann is the owner of the gun." This argument is properly characterized as a challenge to the sufficiency of the evidence presented at trial to convict him.

[6] See Iglesias, 535 F.3d at 161 n. 7 ("We reject Iglesias's contentions that the District Court . . . failed to reconcile his sentence with the sentence received by similarly-situated defendants. Iglesias did not meet his burden of 'demonstrating similarity by showing that other defendants' circumstances exactly paralleled his' and 'a court should not consider parallel sentencing imposed on defendants in other cases in the absence of such a showing by a party.'" (citation omitted)).

[7] In Part One of Ground Fifteen of his petition, Mr. Iglesias claims:
    The New Jersey prior convictions used for [career] criminal enhancements were strenuously objected to, they were obtained in an unconstitutional

**B.     Actual Innocence Claim and Motion For New Trial**

In Ground One of his petition, Mr. Iglesias presents what he characterizes as newly

discovered evidence proving that Eliott Shisler lied when he testified at Iglesias's

suppression hearing and trial.  Pet'r's Mem., 29.  In support of this claim, Mr. Iglesias

attaches Shisler's obituary notice and a copy of a note from Andrea Black[8] to him, which

states that "I can get documentation that Elliot confessed to God + others - that he put an

innocent man to jail because he was [unreadable] and words put in his statement that were

_____

manner, they do not qualify as predicates, and no "Shephard" permissible
documents were ever introduced to qualify them, they should not have
counted [separately] and they are not even final disposition because they are
under direct collateral review in the New Jersey Supreme Court and [may]
not be used to enhance a federal sentence.

Albeit somewhat differently phrased here, this claim was raised and considered on direct
appeal.  At sentencing, Mr. Sciolla argued that Mr. Iglesias should not have received
criminal history points for each of two convictions arising from arrests in Pennsylvania
and New Jersey in January and March of 1993, respectively.  Neither Mr. Sciolla nor Mr.
Iglesias objected to the factual descriptions of his Pennsylvania and New Jersey
convictions, but rather argued that, for purposes of calculating his criminal history
category, the convictions should not have been considered separately because they arose
out of the same general conduct.  Mr. Iglesias then raised this issue on direct appeal and
the Third Circuit rejected it, on the ground that "Iglesias waived any argument that the
District Court improperly relied on the PSR's factual description of his prior crimes when
applying the career-offenses enhancement because he did not challenge the PSR's factual
description of his criminal history in District Court."  Iglesias, 535 F.3d at 161 n. 6 (citing
United States v. Siegel, 477 F.3d 87, 93-94 (3d Cir. 2007)).

In part two of Ground Fifteen, Mr. Iglesias raises another claim already considered and
rejected on direct appeal: that this court erred by basing Mr. Iglesias's sentence on a
finding that the gun discovered in his possession was "loaded."  The Third Circuit
rejected this argument.  See Iglesias 535 F.3d at 161 n. 5.

_____

[8]  At trial, Andrea Black was identified as Mr. Iglesias's girlfriend.

not his but rather what the agents told him to say." This ground is largely styled as a motion for a new trial, however, because Mr. Iglesias also claims it "goes to actual innocence," I will address it both as a motion for a new trial and as an actual innocence claim under § 2255. <u>See</u> Pet'r's Mem., 30.

A § 2255 petition is limited to claims of unlawful imprisonment. In other words, "'federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution,' and not to review questions of guilt or innocence." <u>United States v. Garth</u>, 188 F.3d 99, 108 (3d Cir. 1999) (citing <u>Herrera v. Collins</u>, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). However, a habeas court does not abuse its discretion in treating an actual innocence claim asserted in a § 2255 petition as a motion for a new trial under Federal Rule of Criminal Procedure 33. <u>See</u> <u>United States v. McArthur,</u> Cr. A. No. 94-402-1, Civ. A. No. 01-3943, 2003 WL 1420252 at *4 (E.D.Pa. Mar. 18, 2003) ("This court has the discretion to treat McArthur's motion under § 2255 as a Rule 33 motion, and will do so because McArthur's petition, insofar as it is based on newly discovered evidence, presents no constitutional question for which § 2255 provides a remedy." (internal citations omitted)) *aff'd* 107 Fed.Appx. 275 (3rd Cir. 2004).

Rule 33 requires that a defendant's motion for a new trial based on newly discovered evidence must be filed "within 3 years after the verdict of finding of guilty." FED. R. CRIM. P. 33. In determining whether a motion for a new trial should be granted, courts must apply the following five part test:

(a) the evidence must be[,] in fact, newly discovered, i.e., discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) evidence relied on[ ] must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Jasin, 280 F.3d 355, 361 (3d Cir. 2002) (citing United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir.1976)).

Mr. Iglesias's motion for a new trial therefore fails on two grounds. First, it is untimely. The jury delivered its verdict convicting Mr. Iglesias on August 16, 2005. The time in which he could file a motion for a new trial therefore expired on August 16, 2008, well before he filed his § 2255 motion on February 2, 2010. In addition, Mr. Iglesias has failed entirely to show that this newly discovered evidence would probably produce an acquittal at trial. Though he claims the jury "relied exclusively"on Elliot Shisler's testimony in convicting him, the record here shows otherwise. As noted by the Third Circuit, "overwhelming direct and circumstantial evidence tied Iglesias to Apartment A," where "virtually every room contained damning evidence that Iglesias exercised dominion and control" over it. Iglesias, 535 F.3d at 156-57. Large amounts of methamphetamine and the gun were found in that apartment. Even if Mr. Iglesias could produce actual evidence, apart from the unsubstantiated letter from Ms. Black, that Mr. Shisler was lying, this would be unlikely to produce an acquittal at trial since substantial evidence apart from Shisler's testimony supported Mr. Iglesias's conviction.

Even if this ground were to be liberally construed as an actual innocence claim, it

would fail. "To advance a claim under the 'actual innocence' exception to the procedural default rule, a movant must 'persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" United States v. Dill, 555 F. Supp. 2d 514, 520 (E.D.Pa. 2008) (citing Schlup v. Delo, 513 U.S. 298, 329, 115 S.Ct. 851 (1995)). Mr. Iglesias's actual innocence claim is based on the affidavit from Andrea Black which, even if accepted as true, would not cast doubt on whether Shisler was telling the truth at the time he identified Iglesias as his supplier. Even if Shisler were lying, the evidence in Iglesias's home linking him to drug trafficking was overwhelming, and would have given any juror reason to find him guilty.

Therefore, whether construed as a motion for a new trial or as an actual innocence claim, this ground for relief lacks merit.

### C. Ineffective Assistance of Trial Counsel Claims

In Ground Six of his petition, Mr. Iglesias sets forth eight distinct grounds forming the basis for his assertion that his trial counsel, Guy Sciolla, Esq., rendered ineffective assistance of counsel.

As set forth above, in order to maintain an ineffectiveness claim, a habeas petitioner must show both that his counsel's representation fell below an objective standard of reasonableness and that this deficiency prejudiced him such that the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. A court

reviewing a claim of ineffective assistance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under all the circumstances, the challenged action might be considered sound trial strategy." Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90).  The Third Circuit has set forth the approach District Courts must adopt in determining whether a Section 2255 petitioner is entitled to a hearing on his ineffective assistance of counsel claims:

> First, we must determine whether the district court considered as true all appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the Strickland test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under Strickland, then further factual development in the form of a hearing is required.  That is, if a nonfrivolous claim does not *conclusively* fail either prong of the Strickland test, then a hearing must be held.

United States v. Dawson, 857 F.2d 923, 927-28 (3d Cir. 1988) (emphasis in original).

Because the Third Circuit, in ruling on Mr. Iglesias's direct appeal of his conviction and sentence, declined to reach the question whether his attorney rendered ineffective assistance, I will consider the substance of each of Mr. Iglesias's ineffective assistance claims at this stage regardless of whether they were raised on direct appeal. See Iglesias, 535 F.3d at 161.

### 1.     Failure to File a Discovery Motion

Mr. Iglesias claims his trial counsel was ineffective for failing to file a discovery motion. See Pet'r's Mem., 57-58. Specifically, he claims he was prejudiced by this failure (1) because he did not have access to the notes of government witnesses prior to their testimony at trial or during the suppression hearing; and (2) because he did not receive the expert report or notes from the firearms expert. Id.

Mr. Iglesias has failed to demonstrate that Mr. Sciolla's failure to file a discovery motion was ineffective. This Court confirmed at trial that Mr. Sciolla made a request, on the record, for any notes of government witnesses, and that the government responded that it would give him any relevant notes it had. Moreover, it affirmed that if witnesses brought notes to refresh their recollection the government would provide those notes to Mr. Sciolla during their testimony. See Trial Tr., Aug. 10, 2005 at 173-174. Even if it was somehow unreasonable for Mr. Sciolla not to file a discovery motion prior to trial, Mr. Iglesias has failed to demonstrate any resulting prejudice from an inability to examine witness notes prior to their testimony. He has not identified any material in those notes that would have changed the outcome of the trial had it been available to him.

The only witness Mr. Iglesias specifically identified with regard to Mr. Sciolla's failure to obtain notes is the government firearms expert, David Burlingame. I address elsewhere in this memorandum Mr. Iglesias's claim that Burlingame's testimony was prejudicial. See infra Subsection III(D)(2). Specifically, Mr. Iglesias claims that, had

Burlingame presented the jury or this Court with information about the safety features of the Taurus 9 mm pistol found in Iglesias's possession, the jury would have returned a different verdict and the Court would have imprisoned him for a lesser period of time. These arguments are without merit, so a failure to raise them by trial counsel does not constitute ineffective assistance.

Iglesias's claim that it was ineffective assistance for Mr. Sciolla to fail to file a discovery motion conclusively fails the second prong of <u>Strickland</u>.

### 2.     Failure to Request Specific Jury Instructions

Mr. Iglesias claims Mr. Sciolla rendered ineffective assistance of counsel because he failed to request particular jury instructions.

He begins his argument by stating that "[t]he court specifically asked for points of charge from defense[.]" This is patently false. On the second day of trial, Mr. Sciolla represented that he might submit requested jury instructions pertaining to the impeachment of witnesses, particularly Elliot Shisler. <u>See</u> Trial Tr., Aug. 11, 2005 at 95:18-23. The Court then stated, "I don't need requested points on the general points or on the elements, but anything specific that you would like, I need that as soon as you can." <u>Id.</u> at 95:24-96:1. Therefore, the implication that Mr. Sciolla somehow failed to follow a directive from the Court to file proposed jury instructions is baseless. Mr. Sciolla was invited to file proposed jury instructions only in the event he had specific requests.

Mr. Iglesias does, however, identify specific requests he asserts Mr. Sciolla should have made. He argues first that Mr. Sciolla should have requested an addition to the Court's accomplice instruction, because the instruction the Court gave "unfairly highlights to the jury the fact that the alleged accomplice . . . has already plead[ed] guilty, without also highlighting to the jury that he has not plead[ed] guilty to a conspiracy charge with me." Pet'r's Mem., 59. Because Mr. Iglesias continues that "Shisler could not be considered a coconspirator once he was working for police," I will assume that Shisler is the "alleged accomplice" to whom he refers. No prejudice resulted from Mr. Sciolla's failure to request an additional co-conspirator instruction. The Court instructed the jury about the difference between an accomplice and an informant, warned it to consider an accomplice's testimony carefully, and informed it that an accomplice's plea of guilty is not evidence of a defendant's guilt.[9] Mr. Iglesias has failed to identify a

---

[9] The Court instructed the jury:

> [T]here are certain classes of witnesses whose testimony must be received by the jury with great caution and weighed with great care. These witnesses include accomplices, informers, immunized witnesses or persons who have testified as under an agreement with the Government to cooperate. An accomplice is someone who said he participated in the commission of a crime. One who provides evidence against someone else for money or in the hope of lessening the punishment for his own misdeeds or crimes, or for other personal reasons or advantage, is deemed to be an informer[.] . . . There may be some overlap between these classes and an individual witness may be both an informer, an accomplice, or someone testifying under an agreement with the Government. . . . The fact that an alleged accomplice has entered a plea of guilty to an offense is not evidence of the guilt of any other person, including the defendant.

Trial Tr Aug. 15, 2005 at 116:4-25.

deficiency in the accomplice instruction that, if corrected, would have changed the jury's verdict. He appears to claim that the jury may have been under the mistaken impression that Shisler was Iglesias's co-conspirator even after he began working with the government against Iglesias. Because the indictment filed against Mr. Iglesias, which was produced for the jury during deliberations, explicitly claims that the conspiracy between Shisler and Iglesias ended on August 19, 2004, Mr. Iglesias has not alleged facts supporting his assertion that the jury could have been confused about the date on which the government contended the conspiracy ended. Moreover, even assuming some jury confusion, it is not evident how this would have affected the outcome of Mr. Iglesias's trial. If the jury assumed Mr. Shisler continued to be Mr. Iglesias's co-conspirator at the time he cooperated with police, logic follows that they would believe Mr. Iglesias somehow wanted Mr. Shisler to act as an informant against him. In any case, Mr. Iglesias's claim that some addition to the Court's conspiracy charge and related instructions would have somehow changed the outcome of his trial is baseless and therefore does not support an ineffective assistance of counsel claim.

Mr. Iglesias also argues that Mr. Sciolla should have requested a jury instruction on simple possession. See Pet'r's Mem., 60. Based on the amount of methamphetamine found in his home, Iglesias was charged with conspiracy to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine and possession with intent to distribute more than 500 grams of a mixture or substance

containing a detectable amount of methamphetamine. During his closing argument at trial, Mr. Sciolla argued that the drugs present in Mr. Iglesias's home were "not evidence of delivery" but were rather "evidence of usage." Trial Tr., Aug. 15, 2005 at 78:24-25. He also acknowledged that the government had not charged Iglesias with simple possession, and criticized this as an inflexible, all-or-nothing approach:

> Do you know what the Government is asking you to do? They are asking you to find him guilty of all of it, or none. . . . OK? We don't want you to give Mr. Iglesias a break. We aren't going to let you find him guilty of possession only. That's what they consider fair. I don't know what you think. That remains to be seen.

Id. at 91:7-9; 18-21. Mr. Sciolla's acknowledgment of the fact that the government could have charged with Mr. Iglesias with simple possession, and did not, and his underlying critique of the government's all-or-nothing-approach, reflects that he was aware of the fact that he could have requested a simple possession instruction. Under all the circumstances, an attempt to convince the jury that Mr. Iglesias, an addict, had been unfairly targeted by the government and deserved to be acquitted on all counts, could be considered sound trial strategy. To seek a simple possession instruction would have exposed Mr. Iglesias to conviction on that count, so Mr. Sciolla's actions may reasonably be interpreted as an attempt to instead seek a full acquittal.

Because Mr. Sciolla's failure to request a simple possession instruction could be considered sound trial strategy insofar as it reflected an attempt to secure a full acquittal and avoid an outcome where Mr. Iglesias was convicted on a lesser offense, Mr. Iglesias

has failed to meet the first prong of Strickland on this claim. Moreover, even had this failure somehow constituted objectively unreasonable assistance, there is little likelihood that Mr. Iglesias would have achieved a different verdict, as the evidence that he was a drug distributor was extensive.

Finally, Mr. Iglesias argues Mr. Sciolla was ineffective "for not explaining to the jury a basic defense reasonable doubt instruction, which is 'If you have a reasonable doubt you must by law return a verdict of not guilty' and for not asking the court to instruct the jury on this point of law." Pet'r's Mem., 61. In light of the fact that the Court specifically instructed counsel not to request instructions on general points of law, and itself gave a reasonable doubt instruction to the jury,[10] this claim is patently frivolous.

In sum, Mr. Iglesias's claims that trial counsel was ineffective for failing to request additional jury instructions on conspiracy, simple possession, and reasonable doubt each conclusively fail one or both prongs of <u>Strickland</u>. This ground for relief lacks merit.

### 3. Ineffectiveness at Sentencing

Mr. Iglesias claims Mr. Sciolla was ineffective because he "abandoned" Mr. Iglesias prior to sentencing, specifically by failing to meet with Mr. Iglesias prior to sentencing and failing to file a sentencing memorandum on his behalf. Pet'r's Mem., 61-

---

[10] The Court explained to the jury that "proof beyond a reasonable doubt is proof which leaves you firmly convinced of the defendant's guilt." Trial Tr., Aug. 15, 2005 at 107:22-23. It then explained the concept of reasonable doubt, and finally instructed the jury that "unless the Government proves beyond a reasonable doubt that Enrique Iglesias has committed each and every element of the offense charged in the indictment, you must find him not guilty of that offense." <u>Id.</u> at 108:15-18.

62.

This claim contradicts the record.  At sentencing, this Court confirmed that Mr. Sciolla both met with Mr. Iglesias prior to sentencing and reviewed the presentence investigation report with him.  See Sentencing Tr., Oct. 11, 2006 at 5:11-13.  Mr. Iglesias did not object at that time that he had not met with Mr. Sciolla, nor did he make this claim when directly questioned whether he had any objections to the presentence report that were not raised in argument by Mr. Sciolla.  Id. at 19:15-18.  Mr. Iglesias was given other opportunities at sentencing to inform the Court of any belief that Mr. Sciolla lied when he confirmed that he reviewed the presentence report with Mr. Iglesias: Iglesias addressed the Court directly concerning his motion for downward departure, see id. at 24-25, and was later asked whether he had anything else he would like to say prior to being sentenced, id. at 36.  In light of Mr. Iglesias's repeated interactions with the Court during his sentencing, and his willingness to address the Court in the context of his objection to the presentence report and on other matters, I find his claim that Mr. Sciolla failed to review the presentence report with him prior to trial incredible on its face.  It is simply implausible that he would have been unwilling to bring this matter to the Court's attention despite his eagerness to address the court on so many other issues.  Mr. Sciolla's familiarity with the objections raised by Mr. Iglesias and his able argument on those objections is further evidence that he reviewed the presentence report with Iglesias prior to trial.

The only evidence Mr. Iglesias sets forth in support of this claim is his March 30, 2006 letter to the Court requesting that Mr. Sciolla no longer represent him. This letter represented that Mr. Sciolla had, at that date, failed to meet with Mr. Iglesias to review the presentence report. Because Mr. Iglesias's sentencing was continued and did not take place until October of 2006, and Mr. Iglesias did not renew his objections to Mr. Sciolla's representation at that time, I believe Mr. Iglesias has failed to allege any facts plausibly showing that Mr. Sciolla represented Mr. Iglesias in an objectively deficient manner at sentencing. This ground for relief is meritless.

### 4. Failure to Object On Proper Grounds to Admission of Shisler's Prior Testimony

In claiming Mr. Sciolla failed to make the proper objection to the admission of Shisler's testimony, Mr. Iglesias seizes on the Third Circuit's observation on direct appeal that Sciolla "failed to object to Shisler's prior testimony on the basis of hearsay; instead he objected on the grounds of the best evidence rule." Pet'r's Mem., 62 (citing Iglesias, 535 F.3d at 158). Mr. Iglesias claims Sciolla's failure to make an objection on hearsay grounds constitutes ineffective assistance. Even assuming this failure to make the proper objection constituted deficient performance, there was no prejudice resulting from this error. As the Third Circuit has already ruled, Mr. Shisler's testimony would have been properly admitted as "not hearsay" because it constituted a prior inconsistent statement by a witness under oath. See Iglesias, 535 F.3d at 159 ("We agree . . . that when a witnes who testifies frankly under oath subject to cross-examination only two days later states

that he now 'can't answer the question' and is otherwise evasive and vague, a district

court may find that these statements are inconsistent and may admit the prior testimony

under [Federal Rule of Evidence 801(d)(1)(A)].").  Therefore, even if Mr. Sciolla had

made the hearsay objection, this Court would have been correct in admitting Mr. Shisler's

testimony over that objection.  There is no prejudice resulting from a failure to make the

"proper" hearsay objection.

### 5.      Failure to Interview John Glazeman

Mr. Iglesias argues Mr. Sciolla was ineffective because he "never interviewed the

actual owner of the gun John Glazemann, who was present when police raided the

residence despite my instructions to do so."  Pet'r's Mem., 63.  Mr. Iglesias does not even

attempt to explain how he was prejudiced as a result of this failure, so this claim

conclusively fails the second prong of <u>Strickland.</u>

### 6.      Failure to Investigate Selective Prosecution Claim

There is no evidence in support of Mr. Iglesias's selective prosecution claim.  <u>See</u>

<u>infra</u> Section III(D)(3).  Because this claim lacks merit, Mr. Sciolla's failure to pursue it

at trial or at sentencing does not constitute deficient performance under the first prong of

<u>Strickland</u>.


### <u>D.</u>     <u>Procedurally Defaulted Claims</u>

In addition to his ineffective assistance of trial counsel claim, Mr. Iglesias asserts

an ineffective assistance of appellate counsel claim, including the argument that his appellate counsel was ineffective for failing to raise or brief "my other issues which are presented on this motion." Pet'r's Mem., 38. Because a number of the claims asserted in Mr. Iglesias's petition are procedurally defaulted, and he has not argued that he can overcome this procedural bar by showing cause and prejudice, I will address Iglesias's procedurally defaulted claims only to determine whether a failure to raise them on direct appeal constituted ineffective assistance of counsel. Mr. Iglesias's separately articulated arguments concerning ineffective assistance of appellate counsel are addressed in this context.

Ineffective assistance of appellate counsel claims are governed by the familiar Strickland standard, which requires a showing that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted from that deficient performance. Albrecht v. Horn, 485 F.3d 103, 137 (3d Cir. 2007). "[I]t is a well established principle that counsel decides which issues to pursue on appeal, and there is no duty to raise every possible claim." Sistrunk, 96 F.3d at 670 (internal citations omitted). Determining which issues to raise on appeal requires an exercise of professional judgment. Id. Therefore, in determining whether appellate counsel's decision not to pursue a particular claim on appeal is a reasonable strategic decision, courts properly look to both the number and seriousness of the issues counsel chose to raise on direct appeal, and whether the unraised claim was likely to be meritorious. See

<u>Albrecht</u>, 485 F.3d at 138.

### 1. The Government's Use of Perjured Testimony and Its Commission of Brady Violations

In Ground Two of his petition, Mr. Iglesias claims the government elicited perjured testimony from Mr. Shisler that it had the duty to correct, and that it failed to provide Mr. Iglesias with exculpatory evidence, including notes from agents investigating him. Pet'r's Mem., 31-38. The standard to be applied where a defendant claims the government has presented perjured testimony is the following: "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." <u>United States v. Jackson</u>, 192 Fed.Appx. 96, 98-99 (3d Cir. 2006) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 103, 96 S.Ct. 2392 (1976)). However, "a defendant's knowledge of perjury coupled with his ability to act on it at trial is fatal to a Section 2255 claim" based on the use of perjured testimony. <u>United States v. Biberfeld</u>, 957 F.2d 98, 104 (3d Cir. 1992) (citing <u>Brown v. United States</u>, 445 F.2d 224, 227 (3d Cir. 1977)).

Mr. Iglesias identifies numerous instances in which he claims the government elicited false testimony from Mr. Shisler.


### a. Shisler's Testimony Concerning His Prior Convictions

Shisler testified that he did not plead guilty to gun charges in Bucks County in

connection with his arrest for gun possession on August 19, 2004, and that he had no prior firearms offenses. See Trial Tr., Aug. 11, 2005 at 133-135. Shisler did in fact plead guilty to a gun charge in Bucks County, and he was arrested for firearms possession in 1980. As to Shisler's guilty plea for firearm possession in connection with his August 19, 2004 arrest, defense counsel had equal access to his Bucks County records at the time of Iglesias's trial. Because Shisler's Bucks County plea and his prior arrest both occurred long before Iglesias's trial, and defense counsel had access to this information, Iglesias had both knowledge and the ability to act on his knowledge that Shisler committed perjury.

Failure to raise this claim on direct appeal, as a substantive claim in itself or as an ineffective assistance of trial counsel claim, does not constitute ineffective assistance of counsel. Presumably, Iglesias believes that had the jury known of Shisler's conviction, it would have questioned his credibility and rendered a different verdict against Iglesias. This argument is baseless, as the jury was made aware that Mr. Shisler, as a convicted felon, was prohibited from possessing a gun, because he admitted as much during his direct examination. See Trial Tr., 136:14-25. Shisler did not lie about a conviction for gun possession. He simply stated that he did not remember pleading guilty to gun charges when he pleaded guilty to the other charges brought against him in connection with his arrest. Because any further discrediting of Shisler — a witness the jury already knew to be a drug addict, drug dealer, and felon — was extremely unlikely to affect its judgment

of Shisler or its judgment of Iglesias, a perjury claim would have likely failed on appeal. Therefore, failure to raise it must be considered sound strategy and cannot form the basis for an ineffective assistance claim.

**b.      Shisler's Testimony Concerning His Cooperation**

Iglesias also claims the government suborned perjury by allowing Shisler to testify that he was not benefitting from his cooperation in Iglesias's prosecution. This claim is simply belied by the evidence in the record. After he responded that no one told him his cooperation would be reported to the appropriate authorities, the government impeached Shisler by asking him to confirm that two days prior to his testimony at trial, during the suppression hearing, he testified that "[a]nother thing that was said to me was that if you do the right thing, you know, we'll talk to the judge, and you know, I was just looking out for myself." Trial Tr., Aug. 11, 2005 at 148:5–12. To the extent the government could, it exposed to the jury that Shisler knew he could expect government officials to report his cooperation to relevant state authorities. The government also called FBI Special Agent John Hughes, who confirmed in his testimony that Shisler had been told at the time he was interrogated that "his cooperation would be made known to the prosecutor and to the Judge. Id. at 179:24–180:1. In other words, there is absolutely no evidence in the record that the government knowingly elicited perjured testimony on this subject. Rather, it impeached Shisler when he failed to admit that government agents had offered to help him in exchange for his cooperation and presented further evidence showing the falsity of

Shisler's statement.  This claim is frivolous.

### c.     Shisler's Testimony on the Inhabitants of Iglesias's House

Iglesias claims the government elicited perjured testimony from Shisler when it questioned him concerning the inhabitants of Iglesias's house.  This claim, too, is meritless.  Iglesias bases his claim that Shisler's testimony on this point was perjury on the fact that other witnesses testified that other individuals lived in Iglesias's house, while Shisler testified that only Iglesias lived there.  It is not enough that testimony is challenged or conflicts with that of another witness for it to be perjured.  Jackson, 192 Fed. Appx. at 99.  More importantly, because of the overwhelming evidence that Iglesias exercised control over the premises, any perjury on this point would not have affected the judgment of the jury that Iglesias was guilty.  Because this claim is meritless, failure to raise it on direct appeal does not constitute ineffective assistance of counsel.

### d.     Shisler's Testimony Concerning the Number of Times He Purchased Methamphetamine from Iglesias

Iglesias essentially challenges the government's use of Shisler's suppression hearing testimony to impeach his testimony at trial.  He argues that Shisler's testimony that he had purchased drugs from Iglesias "once or twice" contradicted his statements to law enforcement officials, memorialized in their search warrant affidavit, that he had done so approximately 50 times.  Even if failure to impeach Shisler on this ground constituted perjury, it is highly unlikely that additional discrediting of Shisler would have affected the jury's judgment of him.  See supra Section III(D)(1)(a).  Therefore, had

counsel raised any claim on direct appeal arising out of this issue, it would likely have failed, and refusal to do so must be considered sound trial strategy. There is no ground for an ineffectiveness claim here.

### e. Testimony That Shisler's Cooperation Was Voluntary

Iglesias appears to claim that the government somehow elicited perjured testimony concerning the fact that Shisler voluntarily agreed to the tape recording of his conversation with Iglesias after his arrest. He argument, as best I can construe it, is that because Shisler "recanted a prior [position] that his consent to record the phone call was without threat, coercion, or promises," the government was somehow eliciting perjury by allowing testimony about that phone call. There is simply no evidence indicating that the government had reason to believe perjury was committed by any witness, including Shisler, who testified that Shisler's consent to record a telephone call with Iglesias was not voluntary. Even if, as Iglesias contends, Shisler recanted his claim that he was not coerced into recording the phone call, the government called and extensively questioned Senior Deputy Attorney General of Pennsylvania Iva Dougherty, who explained how and under what circumstances she obtained consent from Mr. Shisler for the call. See Trial Tr., August 8, 2005 at 8–17. A claim that his testimony was coerced is simply untenable in light of her testimony. This claim is frivolous.

### f. Brady Violations

"[T]he suppression by the prosecution of evidence favorable to an accused upon

request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). To establish a violation of the now well-settled <u>Brady</u> rule, a defendant must show that: "'(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment.'" <u>United States v. Pelullo</u>, 399 F.3d 197, 209 (3d Cir.2005) (quoting <u>United States v. Dixon</u>, 132 F.3d 192, 199 (5th Cir.1997)). In support of this claim, Mr. Iglesias provides nothing more than oblique references to the existence of case notes from law enforcement officials that were not provided to defense counsel prior to trial. He does not identify material in those notes that is either favorable to his defense or material to his guilt or punishment. Therefore, there is simply no evidence that a failure on the part of his appellate counsel to raise a <u>Brady</u> claim was somehow unreasonable.

### 2.    Violation of the Sixth Amendment

In Ground Four of his petition, Mr. Iglesias claims that his Sixth Amendment rights were violated because he was misled into stipulating to the testimony of a forensic firearms expert. During trial, the government read this stipulation into the record and for the jury:

> If David Burlingame, Corporal, Firearm and Tool Mark Examiner, Pennsylvania State Police Bureau of Forensic Services . . . were called to testify, he would testify that [the gun found in Iglesias's house, a Taurus semi-automatic 9 mm. pistol,] is a functional firearm and

capable of discharging the type of ammunition for which [it] was manufactured[.]

Trial Tr. 87:1-10. Mr. Iglesias argues that he has "found out since my trial that all models of Taurus Guns are manufactured with child-proof Key Lock mechanisms, security systems, [and] pistol-safety features." He claims that, had he known this and had he been provided with a copy of Burlingame's expert report, he would not have stipulated to the testimony of Burlingame at trial because Burlingame did not mention these safety features. Pet'r's Mem., 46-47. He claims this is material first because the jury "might have considered this missing information in deciding the in furtherance prong of [28 U.S.C. § 924(c)]."

The question whether Mr. Iglesias possessed a gun in furtherance of a drug trafficking crime in violation of Section 924(c) does not hinge on whether the gun had safety features. As this Court instructed the jury, properly, the government had to prove three elements in order for the jury to convict Mr. Iglesias on this ground: first, that he was guilty of a drug trafficking crime; second, that he possessed a firearm; and third, that he knowingly possessed that firearm in furtherance of the drug trafficking crime. See Tr. Transcript at 134; 18 U.S.C. § 924(c)(1). Nowhere does Mr. Iglesias contend that the pistol in his possession was not a firearm; rather, he simply claims that it contains safety features which were not revealed to jury. The presence of safety features would not have affected the jury's finding that Mr. Iglesias was guilty of possessing a firearm in furtherance of a drug trafficking crime. Even if, as Mr. Iglesias claims, his trial counsel

did not share the expert's report with him, and this fell below standards of objective reasonableness, there is no prejudice to Mr. Iglesias. In light of the court's instructions and the fact that Mr. Iglesias does not contest that the pistol was an operating firearm, the jury's verdict on his Section 924(c) charge would have remained the same even if they were made aware of the presence of safety features. A failure to raise this claim on direct appeal therefore does not constitute ineffective assistance of counsel.

### 3. Discriminatory Prosecution on the Basis of Race and National Origin

In Grounds Five and Twelve of his petition, Iglesias claims he was the victim of selective and discriminatory prosecution at the hands of the United States Attorney's Office. In addition to asserting this claim as a ground for vacating his conviction, he seeks discovery to pursue it further. Specifically, he alleges that it was on the basis of a mistaken belief that he is a Cuban national that he was targeted for federal prosecution. He claims the federal government's failure to prosecute Elliot Shisler for bombs found in his home and for his other violations of federal firearms statutes is evidence that Iglesias was targeted specifically for federal prosecution. See Pet'r's Mem., 51-57. He also cites an email entitled "CUBAN ARRESTED ON BIG METH CHARGES" sent from a local prosecutor to Homeland Security, and the government's reference to his nationality at a detention hearing, as evidence that he was subject to discrimination on the basis of his national origin.

The Due Process Clause of the Fifth Amendment prohibits the government from

selectively prosecuting an individual based on that person's race, religion, or some other arbitrary classification. See United States v. Armstrong, 517 U.S. 456, 463, 116 S.Ct. 1480 (1996). In order to succeed on a selective prosecution claim, "the claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." United States v. Hedaithy, 392 F.3d 580, 606 (3d Cir. 2004) (citing Armstrong, 517 U.S. at 464 (internal quotations omitted)). "To complement this 'rigorous standard for proving a selective-prosecution claim, the Supreme Court requires a 'correspondingly rigorous standard for discovery in aid of such a claim.'" Id. at 607 (citing Armstrong, 517 U.S. at 468). To meet this rigorous discovery standard, the claimant must present "some evidence tending to show the existence of the essential elements[.]" Id. To show discriminatory effect, the claimant must make a credible showing that "similarly situated individuals of a different race were not prosecuted." Id. In applying this standard, the Supreme Court has found no discriminatory effect where the claimant failed to identify individuals of a different race than the claimant, who could have been prosecuted for the same conduct the claimant was, but were not. See Armstrong, 517 U.S. at 470. In a later case, the Supreme Court again stressed the importance of identifying similarly situated defendants who were treated differently. See United States v. Bass, 536 U.S. 862, 863, 122 S.Ct. 2389 (2002).

Iglesias has failed to meet the high threshold required to support his motion for discovery pertaining to his selective prosecution claim. Although he has identified an

individual, Elliot Shisler, who was not of Cuban descent and who was not federally prosecuted, as Iglesias was, there are so few similarities between the evidence obtained against the two men that they cannot realistically be termed "similarly situated." Mr. Shisler was found with a small quantity of methamphetamine, while Mr. Iglesias was found with over 1300 grams of methamphetamine, the street value of which was estimated by officials to be $227,400. See Iglesias, 535 F.3d at 154; Iglesias Appendix at 33. Moreover, Mr. Shisler agreed to cooperate with officials shortly after his arrest, further distinguishing his situation from that of Mr. Iglesias. Finally, Mr. Iglesias cites the disparate sentences he and Mr. Shisler received, and cites court transcripts from Mr. Shisler's sentencing in Bucks County. Because Shisler's sentence has nothing to do with the federal government's decision to prosecute Mr. Iglesias, this evidence is irrelevant.

Neither does the evidence Mr. Iglesias has presented that various state and local officials referenced his nationality during the course of his prosecution constitute credible evidence that federal prosecutors selectively prosecuted him based on his race and national origin.[11] The Assistant United States Attorney who prosecuted Mr. Iglesias,

---

[11] There is some dispute between Mr. Iglesias and the government about his citizenship status. Mr. Iglesias avers in his motion that he has been a United States citizen "since the 1970's" and that it is based upon the government's mistaken belief that he remains a Cuban citizen that he was selectively prosecuted. See Pet'r's Mem., 54. The government contends there is no evidence he is a United States citizen and that, rather, the pre-sentence investigation conducted prior to Mr. Iglesias's incarceration revealed that he was residing in the United States at the time of his arrest as a permanent resident, not a citizen. In any event, even if the government's belief that Mr. Iglesias was a Cuban national was mistaken, there is no evidence that this belief impacted any decision to prosecute him and therefore, this dispute is irrelevant.

Ewald Zittlau, has also sworn by affidavit that he did not prosecute Mr. Iglesias based on his Cuban nationality and that he was unaware of the email entitled "CUBAN ARRESTED ON BIG METH CASE" until Iglesias filed his petition for habeas relief. See Ewald Affidavit. As argued by the government in its response to Mr. Iglesias's petition, it is common sense that the foreign nationality of a non-citizen defendant will be referenced at a bail hearing and sentencing in light of the fact that deportation will generally follow after conviction and, if imposed, a federal sentence. The government also cites the case opening sheet for Mr. Iglesias's federal prosecution, which makes no reference to his Cuban nationality and instead simply states: "[defendant], a convicted felon, caught with over 1 kg of crystal methamphetamine, loaded 9 mm, scales, etc." See Gov. Resp., Ex. 1.

Mr. Iglesias has failed to meet the high threshold required for this Court to grant his motion for discovery. That motion, and his motion to vacate based upon this ground, are meritless and without any evidentiary support. Therefore, failure on the part of Iglesias's appellate counsel to raise this issue does not constitute ineffective assistance.

### 4. Failure to Appeal District Court's Denial of Motion to Suppress

In Ground Seven of his petition, Mr. Iglesias asserts three claims. The first is incognizable.[12] The second is that his appellate counsel was ineffective for failing to

---

[12] Under subsection 1 of this ground, Mr. Iglesias asserts: "The appeal panel ruled on my 801 impeachment issue of Elliot Shisler, But curiously enough they state; 'Although we have yet to decide the precise issue presented here' US v. Iglesias 535 F.3d id at 159, also see (Ground Three gov. abuse of rule 801)." Because I cannot even determine what claim Mr. Iglesias intends

request a transcript of the hearing held on his motion to suppress and then seeking reversal of this court's denial of the motion to suppress on appeal. The third claim, that his appellate counsel was ineffective for failing to raise all claims raised in Mr. Iglesias's habeas petition, is addressed in the context of each of the procedurally defaulted claims in his petition. Therefore, only the second claim merits separate discussion. Because Ground Eight of Iglesias's petition raises the claim that his conviction was obtained in violation of the Fourth Amendment, and he raises in that ground the same arguments raised by his trial counsel in the motion to suppress, that claim is properly addressed here, and is properly characterized as follows: if Mr. Iglesias, through Mr. Sciolla, indeed presented meritorious issues in his motion to suppress that, if raised on appeal would have changed the outcome of that appeal, then his appellate counsel was ineffective.

In asserting that his conviction was obtained in violation of the Fourth Amendment and that his appellate counsel was ineffective for failing to raise this issue on appeal, Mr. Iglesias focuses on the claim that police coerced Eliott Shisler into both providing them information about Mr. Iglesias and consenting to a recorded call with Iglesias. See Pet'r's Mem., 66-67.[13] Prior to trial, Mr. Sciolla filed a motion to suppress, asserting this and

─────────────────────────

to make by citing this portion of the Third Circuit's opinion, I will not attempt to construe it as a properly raised claim and will only address the other two claims asserted under Ground Seven.

[13] Iglesias also claims the police violated the "knock and announce" rule articulated in Federal Rule of Criminal Procedure 3109 when they executed the arrest warrant at his home. See Pet'r's Mem., 66. This argument, in the original suppression motion, consisted of one generic sentence, and here, Mr. Iglesias does little to present further facts in support of it, other than to state that police "battered the front door down with an 80 lbs ram that had stenciled on it "MY

other arguments for suppression of the evidence obtained against Mr. Iglesias.  <u>See</u> Mot. To Suppress, Document No. 32, ¶¶ 6, 7.

This Court held a suppression hearing on August 9, 2005, during which it heard testimony from Mr. Shisler.  The Court denied the motion after Mr. Shisler testified that he agreed to act as an informant for police in part out of concern for his girlfriend and in order to prevent her from being arrested, but also because he "was worried about going to jail" and was "looking out for [himself]."  <u>See</u> Tr. Suppression Hrg., Aug. 9, 2005 at 12-15; 15:6-9.  Mr. Shisler also testified that he couldn't recollect with precision his interactions with police on the day of his arrest, largely due to problems with his memory. <u>Id.</u> at 18:7-16.  On cross-examination, Mr. Shisler admitted that while in the custody of police, he was given his medication after he arrived at the police station, but couldn't recall exactly when.  <u>Id.</u> at 19-20.  In sum, Mr. Shisler did not definitively testify that police had withheld medication from him, admitted that his memory of the day of his arrest was faulty, and conceded that, rather than being threatened into cooperating, he had done so out of concern for himself and a desire to avoid a jail sentence.

Mr. Iglesias's appellate counsel raised no fewer than ten different arguments on

---

TOY YOUR DOOR."  <u>Id.</u>  In order to collaterally attack his conviction on this knock-and-announce rule violation, Mr. Iglesias has to allege more facts in support of his claim, which he fails to do.  Instead, he cites the same law Mr. Sciolla cited in his motion to suppress, but fails to explain how pursuit of this claim would have changed the outcome of his trial or would have been successful on appeal.  In essence, it appears Mr. Iglesias has included this claim as an afterthought.  I will not address it further, as he has failed to allege sufficient facts to allow for a reasoned analysis.

appeal, including, among other claims, that the evidence presented at trial was insufficient to support Iglesias's conviction, that the District Court erred by admitting Shisler's suppression hearing testimony, that the District Court erred at sentencing by failing to exclude from the quantity of drugs seized from his home the amount he planned to keep for personal use, and that his sentence was imposed without proper consideration of the sentencing disparity between he and Mr. Shisler.  See Iglesias, 535 F.3d 150.  Ms. Sturm chose not to include an appeal of the District Court's decision denying Iglesias's motion to suppress.  As outlined above, Mr. Shisler did not provide strong testimony at his suppression hearing that he was coerced into cooperating with police.  Because it was unlikely that an appeal of the motion to suppress ruling would have been successful, it cannot be considered unreasonable for Ms. Sturm to decline to raise this issue on appeal.

**5.    Conviction Obtained in Violation of the Sixth Amendment Right to Present a Defense, Constitutionally Deficient Reasonable Doubt Instruction, and Improper Closing by the Government**

In Ground Ten of his petition, Mr. Iglesias makes a number of unrelated claims, each of which I will address in turn.

**a.    Error in Excluding Certain Physical Evidence from Jury Deliberations**

Mr. Iglesias claims this Court erred by refusing send into the jury room, along with other exhibits, "a womans pocketbook, which by it's nature is exculpatory, containing a number of female items, money, and Atlantic City Casino gambling cards."  Pet'r's Mem., 72.  I begin by noting that the exhibit to which Mr. Iglesias seems to be referring is

not a pocketbook, but was rather a fanny pack.  At trial, Mr. Sciolla relayed Mr. Iglesias's request that the fanny pack be permitted to go to the jury room during deliberations, since "one of the alternative defenses in this case is that the fanny pack is a female item and has a number of things in there that would be in a female's possession."  Trial Tr., Aug. 15, 2005 at 148:1–6.  After an examination of the fanny pack revealed that it contained various items including a lighter, a number of sets of keys, casino cards, a pipe, and Tylenol packet, this court denied defense counsel's request to send it to the jury.  Id. at 148:22–149:6.  The court stated, on the record, a number of reasons the fanny pack would not be sent to the jury after deliberations had begun, including concern that taking some items out of it and sending others to the jury would suggest that certain items were more significant than others, and that sending the fanny pack to the jury separately would suggest that it was of enhanced evidentiary value.  See id. at 149–50.  The court agreed that if the jury requested to examine this item, it would be allowed to do so.  See id.  Mr. Sciolla objected on the record to the Court's ruling.  See id. at 150:9–12.

Whether documents or other evidentiary exhibits properly admitted at trial should or should not accompany the jury to the jury room is a discretionary matter for the trial court.  United States v. Hicks, 373 F.Supp. 515, 518-19 (E.D.Pa. 1974); United States v. Zgrzepski, 323 Fed.Appx. 177, 182-83 (3d Cir. 2009).  "There is no abuse of discretion unless the exclusion of evidence was prejudicial."  Zgrzpski, 232 Fed.Appx. at 183.  It is within the discretion of the trial court to refuse to submit exhibits to the jury during

deliberations, and this Court stated on the record its valid reasons for refusing to submit the fanny pack. Morever, although Mr. Iglesias argues that this item was distinctly female because it contained "female items," there is no evidence in the record supporting this assertion. Therefore, it is highly unlikely that, had this issue been raised on appeal, it would have been meritorious. An appellate attorney need not raise every possible argument on appeal, and cannot be considered unreasonable in choosing not to raise an issue that is so unlikely to be successful. Because Mr. Iglesias has conclusively failed to meet the first prong of <u>Strickland</u> on this claim, it cannot form the basis for habeas relief.

### b.    Deficient Jury Instructions

Mr. Iglesias also claims that the Court's instructions on reasonable doubt and on conspiracy were deficient. A District Court's jury instructions are reviewed under an abuse of discretion standard to determine "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." <u>United States v. Zehrbach</u>, 47 F.3d 1252, 1264 (3d Cir. 1995) (quoting <u>Bennis v. Gable</u>, 823 F.2d 723, 727(3d Cir. 1987)). A conviction will be overturned only where an instruction "was capable of confusing and thereby misleading the jury." <u>Id.</u> (citing <u>Bennis</u>, 823 F.2d at 727).

Mr. Iglesias claims the reasonable doubt instruction did not contain "simple everyday language a layperson can understand." Pet'r's Mem., 74. In particular, he claims the Court's instruction that reasonable doubt "is the kind of doubt that would make

a reasonable person hesitate to act in matters of importance in his or her own affairs," was confusing to the jury, as evidenced by the fact that the jury requested an additional explanation of reasonable doubt after deliberations began. Id. at 75 (citing Trial Tr., Aug. 15, 2005 at 108:6-8). He also claims this instruction was deficient because it did not impart to the jury the importance of the concept of reasonable doubt in determining whether to convict a defendant standing trial for criminal offenses. Id. This court's reasonable doubt instruction closely mirrored the Third Circuit Model Criminal Jury Instructions for reasonable doubt, and fairly and adequately explained the concept of reasonable doubt to the jury. Appellate counsel was reasonable in declining to pursue this issue on appeal.

Mr. Iglesias also claims this court's conspiracy instruction was deficient because it did not include a instruction to the jury that Elliot Shisler "did not plead guilty to any conspiracy charge with [Mr. Iglesias]." Pet'r's Mem., 76. This is essentially the same claim Iglesias asserted in Ground Six of his petition, alleging ineffective assistance of trial counsel. Because jury instructions are reviewed under an abuse of discretion standard and this court's conspiracy instruction fairly and adequately submitted the issues, it was sound strategy for his appellate counsel to decline to raise this issue on appeal.

### c. Improper Closing Argument by the Government

Mr. Iglesias claims the government made an improper and prejudicial statement during its closing argument to the jury and thereby violated his right to a fair trial.

Specifically, he claims it was prejudicial for the government to reference Thomas

Malone, a defense witness, as "associated with the individual on trial." Pet'r's Mem., 78.

Malone admitting during cross examination that he was serving a sentence of

imprisonment in Bucks County Prison for various crimes, including possession of a gun

he had used to fire at police. See Trial Tr., Aug. 15, 2005 at 15-16.

Because Mr. Iglesias's trial attorney failed to object to this argument during trial, it

is procedurally defaulted and will only be considered in the context of Iglesias's

ineffective assistance of counsel claims. An appellate court will not reverse a conviction

for prosecutorial misconduct when the error committed by a prosecutor is harmless.

Zehrbach, 47 F.3d at 1265. "[N]on-constitutional error is harmless when 'it is highly

probable that the error did not contribute to the judgment.'" Id. (citing Gov't of Virgin

Islands v. Toto, 529 F.2d 278, 284 (3d Cir.1976)). In other words, in order to reverse a

conviction for prosecutorial misconduct, the reviewing court must be convinced that the

error prejudiced the defendant. Id. There is no likelihood that Mr. Iglesias was

prejudiced by the government's characterizing him as being "associated with" Thomas

Malone. The government did not state or imply that Mr. Iglesias was in any way involved

with the incident where Mr. Malone shot at police, and during its cross examination of

Mr. Malone, it did not mention Mr. Iglesias in the context of the police shooting. Mr.

Iglesias was found guilty of distinct drug distribution and firearm possession crimes

unrelated to Malone's shooting at police. Moreover, because overwhelming evidence

existed linking Iglesias to the drugs and firearm discovered in his home, no inference on the government's part that he was associated with Malone would have contributed significantly to the jury's finding of guilt. Counsel's failure to raise this issue on appeal reflects a sound strategy to omit non-meritorious arguments at that stage. Iglesias has conclusively failed to satisfy the first prong of Strickland on this claim.

### 7. Improper Imposition of a Consecutive Sentence

In Ground Thirteen of his petition, Mr. Iglesias claims the Court erred when it sentenced Mr. Iglesias to a mandatory minimum sentence of sixty months for his conviction under 18 U.S.C. § 924(c)(1), because he received longer mandatory minimum sentences of 360 months each for his convictions for conspiracy and possession with intent to distribute methamphetamine on Counts One and Two. 18 U.S.C. § 924(c)(1) provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person[.]" 18 U.S.C. § 924(c)(1)(D). However, in a prefatory clause, § 924(c) also provides that this mandatory consecutive sentence is to be imposed "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law[.]" 18 U.S.C. § 924(c)(1)(A)(I). At sentencing, this court ruled that Mr. Iglesias was to serve his sixty month mandatory minimum sentence on Count Three consecutive with his sentences on Counts One, Two, and Four. On each of Counts One and Two, Mr. Iglesias faced a guideline range of 360 months to life imprisonment. Accordingly, this

Court sentenced him to 360 months on Counts One and Two, and to sixty months on Count Four to run concurrently with his sentence on Counts One and Two.  He sentence on Count Three, however, runs consecutively to his sentence on Counts One, Two, and Four, resulting in a total imprisonment term of 420 months.

The question of whether the "except" clause in Section 924(c)(1) mandates that its sixty month mandatory minimum not be imposed where a defendant faces a higher minimum sentence for other crimes has been addressed by the Third Circuit.  In <u>United States v. Abbott</u>, it ruled that § 924(c)'s prefatory clause applied only to "other minimum sentences that may be imposed for violations of Section 924(c), not separate offenses." Because Mr. Iglesias received higher sentences for convictions under 21 U.S.C. §§ 841 and 846, these higher sentences do not fall under § 924(c)'s prefatory clause under controlling Third Circuit law.

However, as the government notes in its response to Mr. Iglesias's claim, the Supreme Court of the United States granted a petition for certiorari to review a circuit split concerning the scope of § 924(c)'s prefatory clause.  On November 15, 2010, it issued a decision affirming the Third Circuit's holding in <u>Abbot</u>, finding that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."  <u>Abbott v. United States</u>, - - U.S. - -, 131 S.Ct. 18, 23 (2010).  Mr. Iglesias' argument, therefore, is without merit, and cannot form the basis for

an ineffective assistance of appellate counsel claim, since no prejudice resulted from the District Court's proper application of § 924(c).

### 8. Failure to Hold A Hearing Pursuant to Federal Rule of Criminal Procedure 32 and Failure To Consider Sentencing Disparities

In Ground Fourteen of his petition, Mr. Iglesias claims his sentence was imposed in violation of Federal Rule of Criminal Procedure 32. See Pet'r's Mem., 88. He argues specifically that the Court "never had a Rule 32 hearing or discussion on any of my written objections either the (2) motions from the 02/24/2006 hearing or the 7/31/2006 objections." Id. Mr. Iglesias's sentencing was originally scheduled for November 15, 2005, and was then rescheduled a number of times before it was held on October 11, 2006. At sentencing, this Court confirmed that Mr. Sciolla reviewed the presentence investigation report with Mr. Iglesias and then questioned Mr. Sciolla whether he had any objections to the report. In response, Mr. Sciolla asked that the Court consider the issues raised by Mr. Iglesias in his *pro se* objections to the report. Sentencing Tr., Oct. 11, 2006 at 5. The Court then heard argument on those objections from Mr. Sciolla, the government, and the probation officer who prepared the report. See id. at 5-17.

Rule 32 requires, among other things, that a probation officer give the defendant at least 35 days before sentencing to review the presentence report. See Fed. R. Crim. P. 32(e)(2). The Rule nowhere requires that a sentencing court hold a hearing on those objections prior to sentencing, and rather mandates only that it "must — for any disputed portion of the presentence report or other controverted matter — rule on the dispute or

determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." FED. R. CRIM. P. 32(i)(3)(B).[14]  This Court ruled on the objections raised by Mr. Iglesias and argued by Mr. Sciolla at sentencing.  See Sentencing Tr., Oct. 11, 2006 at 17.  Further, the Court gave Mr. Iglesias the chance to state any further objections on the record, and after he had done so, asked him a second time whether he had any "objections, modifications, or corrections to the presentence report."  Id. at 19:15-16.  Mr. Iglesias responded that he did not.  Id. at 19:17.

Mr. Iglesias's claim that his sentence violated Rule 32 because this Court failed to properly rule on his objections to the presentence report is therefore without merit.  Any failure to raise this issue on appeal does not constitute deficient performance and cannot

---

[14]  Mr. Iglesias relies primarily on United States v. Gross, 961 F.2d 1097, 1109 (3d Cir. 1992) for his argument that this Court failed to make the findings required under Rule 32.  The version of the Federal Rules of Criminal Procedure in effect at the time the Third Circuit issued its decision in Gross mandated, in section (c)(3)(D), that "[i]f the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission."  Following amendments to the Criminal Rules in 2002, former section (c)(3)(D) ceased to exist, and was amended as current section (i)(3).  Therefore, to the extent Gross contains a controlling interpretation of former section (c)(3)(D), it is no longer relevant and was not relevant at the time of Mr. Iglesias's sentencing in 2006.

form the basis for an ineffective assistance of counsel claim.

### E.     Claims Over Which the Court Lacks Jurisdiction

Mr. Iglesias does not assert a constitutional violation in Ground Sixteen of his petition, and rather seeks an order from this Court directing the Bureau of Prisons to cease collection of the fine imposed as part of his sentence. Mr. Iglesias has cited no law in support of his claim that alteration of the fine imposed at sentencing is properly the subject of a habeas corpus petition. Indeed, this Court does not have the jurisdiction to review any claim based on the fine component of Mr. Iglesias's sentence because a monetary fine does not sufficiently impose a restraint on Mr. Iglesias's liberty such that it is subject to collateral attack. See e.g., United States v. Marron, Crim. No. 93-90, 1996 WL 677511 at *3 (E.D.Pa. Nov. 22, 1996) ("In [petitioner's] claims for relief based on the fine and restitution components of his sentence, [he] is not attacking his sentence of supervised release — he is attacking the validity of the order to make a monetary payment. Section 2255 is a device to contest the lawfulness of custody; if resolution of the motion in the petitioner's favor will not affect the plaintiff's custody, the court lacks subject matter jurisdiction to consider the motion."); United States v. Leeper, Nos. 97-274, 98-4022, 98-4312, 1999 WL 200669 at *2 (E.D.Pa. Apr. 7, 1999) (finding lack of jurisdiction to hear a challenge to a restitution order asserted under § 2255). This Court is without jurisdiction to entertain Mr. Iglesias's request to modify the terms of his fine.

Mr. Iglesias also requests that the court order the Clerk of Court to modify any

official documentation with a caption containing an a/k/a for Mr. Iglesias as "Agent Henry."  For the same reasons this court does not have jurisdiction to modify the terms of Mr. Iglesias's fine, it does not have jurisdiction to order the Clerk of Court to amend wrongly captioned documents.

## IV.    CONCLUSION

For the reasons set forth above, I will deny Mr. Iglesias's petition in its entirety and deny his related discovery motions.  An appropriate order follows.