IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ENRIQUE IGLESIAS | CRIMINAL ACTION<br>NO. 04-00647 |

PAPPERT, J.                                                                         January 19, 2021

### MEMORANDUM

Enrique Iglesias seeks in two Motions compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court denies the Motions because the factors under 18 U.S.C. § 3553(a) counsel against granting relief.

I

A

On August 17, 2005 a jury convicted Iglesias of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). (Gov't Resp. 1–2, ECF No. 128); (Suppl. Mot. for Release 4, ECF No. 132.)[1] Law enforcement apprehended him on August 19, 2004 after they found thirteen bags containing 156 grams of a mixture or substance containing a detectable amount of methamphetamine, $17,084.53 cash and a loaded firearm with an obliterated serial number while executing a search warrant in his apartment. (Gov't Resp. 1); (Suppl. Gov't Resp. 2, ECF No.

---

[1]    Record citations reflect page numbers generated by the Court's electronic case filing system.

1

136.)

Iglesias is a career offender. *See* (PSR ¶ 22); U.S.S.G. § 4B1.1. He was forty-nine years old when he was arrested on August 19. (*Id.* at 2.) Before then he amassed fourteen state criminal convictions between ages twenty and thirty-eight, including four felony convictions involving controlled substances, often methamphetamine, convictions for physical violence, use of a firearm during an assault, concealment of a deadly weapon and fraud. *See* (PSR ¶¶ 29–43); (Suppl. Gov't Resp. 13). He committed his current offense nineteen months after concluding several-year prison terms for engaging in two conspiracies to manufacture methamphetamine. *See* (PSR ¶ 45); (Suppl. Gov't Resp. 12).

On February 24, 2006 Iglesias was sentenced to 420 months' imprisonment, followed by five years of supervised release. *See* (Judgment, ECF No. 88); (Gov't Resp. 2); (PSR ¶ 23); (Mot. for Release 5, 32, ECF No. 123). His sentence included 360 months for his 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 922(g) violations (the bottom of his guideline range) and a mandatory sixty-month consecutive sentence for his 18 U.S.C. § 924(c) violation. (Gov't Resp. 2); (Suppl. Mot. for Release 4–5.) He appealed his sentence and the Third Circuit affirmed. *See United States v. Iglesias*, 535 F.3d 150, 161 (3d Cir. 2008).

Iglesias is now sixty-six years old and, counting accrued good time credit, he has served approximately 221 months of his sentence. (Gov't Resp. 2); (Suppl. Gov't Resp. 3.) He has committed five disciplinary infractions during that time, including one for possession of methamphetamine and oxycontin in his cell, one for possession of marijuana and one for fighting. (Suppl. Gov't Resp. 3); (Suppl. Mot. for Release Ex. E,

ECF No. 132-5.) His most recent infraction was for possession of a cell phone in December of 2017. (Suppl. Mot. for Release Ex. E 2.) His current anticipated release date is August 19, 2034. (Gov't Resp. 2); (Suppl. Mot. for Release 5.)

B

Following the onset of the COVID-19 pandemic, on July 19, 2020 Iglesias petitioned the warden at FCI Fort Dix for compassionate release based on his hypertension, pre-diabetes, obesity, shortness of breath and status as a former smoker. (Suppl. Mot. for Release Ex. B, ECF No. 132-2.) The warden did not respond to his request. (Mot. for Release 29, ECF No. 123.)

Iglesias now moves in a *pro se* Motion and counseled Supplemental Motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He alleges he suffers from hypertension, metabolic syndrome, diabetes, shortness of breath, obesity, high cholesterol, clogged arteries, heart disease, depression, cataracts, keratoconus and chronic back pain. (Mot. for Release 35); (Suppl. Mot. for Release 3, 6–7, 14.) He argues he faces an elevated risk of contracting COVID-19 in prison and that his risk of severe illness or death from the virus is increased by his medical conditions and ethnicity. *See* (Mot. for Release 6–8, 31, 38–41, 49–50); *see also* (Def.'s Letter to Court 1–3, ECF No. 127); (Suppl. Mot. for Release 11–15); (Def.'s Reply 3, ECF No. 139). He also contends the "non-violent" nature of his offense and 18 U.S.C. § 3553(a) sentencing factors support his release. *See* (Mot. for Release, 43–44, 46); (Suppl. Mot. for Release 15–19). He states he has developed skills to facilitate his reentry and "engaged in an intensive effort to rehabilitate" during his incarceration. (Mot. for Release 5–6, 11–19, 32); *see also* (Suppl. Mot. for Release 17–18); (*id.* Ex. D, ECF No. 132-4).

3

Iglesias also argues his release is appropriate because if he were sentenced today he "would probably receive a total sentence of 10-years for the drugs and 5-years for the firearm." (Mot. for Release 47.) He claims his total offense level at sentencing was twenty six, even though the Court found it was thirty seven due to his indisputable career offender status. *See* (*id.*); (PSR ¶ 22). He also suggests the First Step Act's amendments to 18 U.S.C. § 924(c) support his argument. *See* (Mot. for Release 47).

Iglesias further contends his continued detention in an environment that increases his risk of contracting COVID-19 violates his Eighth Amendment rights. (Mot. for Release 44–45.) He asserts COVID-19 cases have proliferated at FCI Fort Dix and the prison has taken insufficient action to mitigate the spread. *See, e.g.*, (Mot. for Release 38–41, 49–50); (Def.'s Letter to Court 1–3); (Suppl. Mot. for Release 14); (Def.'s Reply 3).

C

Iglesias's medical records confirm he presents, among other conditions, obesity, high blood pressure, diabetes, high cholesterol, exertional dyspnea, depression and cataracts and show he has a history of smoking and back pain and a referral for an angiogram to study his risk of heart attack. *See* (Def.'s Ex. 9–13, ECF No. 126); (Def.'s Second Letter to Court 2, ECF No. 135); (Suppl. Gov't Resp. 3–4); (Gov't Ex. A, ECF No. 137); *see generally* (Suppl. Mot. for Release Ex. A, Ex. C, ECF Nos. 132-1, 132-3). The Government acknowledges his conditions present extraordinary and compelling circumstances that may justify release because he presents multiple COVID-19 risk factors, including the obesity, diabetes and potential heart condition. *See* (Suppl. Gov't Resp. 11 n.4); *see also* Application Note 1(A) to U.S.S.G. § 1B1.13. But it argues all of

his conditions appear to be appropriately managed with medication in prison. (Suppl. Gov't Resp. 4, 12); *but see* (Def.'s Reply 1–2 (identifying untreated conditions)). Moreover, Iglesias continues to present a danger to the community and should be required to serve his full sentence. (Suppl. Gov't Resp. 12.)

Iglesias responds "there exists no objective basis to assert" he presents a danger to the community based on his recent conduct and history. (Def.'s Reply 2.) His security classification has steadily decreased during his incarceration, his only infraction since 2005 occurred when his mother died and he has engaged in educational, vocational and life-skills programming. (*Id.*) His advanced age reduces his likelihood of recidivism and he has significant family connections and a stable, supportive home to which he can be released. (*Id.* at 2–4.) His mandated supervised release after incarceration further mitigates any danger he might pose. (*Id.* at 4.)

## II
## A

A district court may reduce an inmate's sentence as a form of compassionate release only if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction ; and (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Relevant § 3553(a) factors a court must consider include "the history and characteristics of the defendant" and the "need for the sentence imposed—to reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense" and "protect the public from further crimes of the defendant." *Id.* at § 3553(a)(1), (2)(A), (C). The applicable Sentencing Commission policy statement

5

requires a court to determine a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g)" prior to release. U.S.S.G. § 1B1.13.

## B

### i

The Court agrees with the Government that Iglesias's obesity, diabetes and potential heart condition present extraordinary and compelling circumstances that may justify his release. His other claims provide no basis for relief under 18 U.S.C. § 3582(c)(1)(A).

Iglesias's claim that his sentence would be approximately fifteen years if he were sentenced today is meritless. At sentencing, his offense level was thirty seven and his criminal history category was VI. *See* (PSR ¶¶ 23, 46–47). The Sentencing Guidelines today recommend a sentence of 360 months to life for those numbers. *See Chapter Five – Determining the Sentence*, United States Sentencing Comm'n, https://www.ussc.gov/guidelines/2018-guidelines-manual/annotated-2018-chapter-5 (last visited Jan. 19, 2020). Moreover, the First Step Act's amendments to 18 U.S.C. § 924(c) did not eliminate the mandatory minimum five-year sentence for possessing a firearm during and in relation to a drug trafficking crime or remove the requirement that § 924(c) sentences run consecutive to any other term of imprisonment. *See* 18 U.S.C. § 924(c); First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22. The First Step Act would have no impact on Iglesias's five-year consecutive sentence for violating § 924(c) if he were sentenced today.

Iglesias's Eighth Amendment challenge to the conditions of his confinement is

not properly raised in his compassionate release Motion. *See Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012) (28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence") (quoting *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005)); *United States v. Rodriguez-Collazo*, No. 14-cr-00378, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020) ("Defendant contends that the current conditions at Elkton FCI violate his Fifth and Eighth Amendment rights. . . . However, these claims—which the Court construes as challenging the execution of his sentence at Elkton FCI—are not properly brought in a motion for compassionate release, and this Court does not have jurisdiction to consider them."); *United States v. Buckman*, No. 14-540-01, 2020 WL 4201509, at *5 (E.D. Pa. July 22, 2020) ("claims relat[ing] to the manner and conditions of . . . confinement . . . . are not appropriate in motions for compassionate release."); *United States v. Butler*, No. 16-54, 2020 WL 3207591, at *3 (D. Del. June 15, 2020) (allegation that prison officials mishandled COVID-19 crisis not a basis for compassionate release).

ii

Even though Iglesias's health could support compassionate release under appropriate circumstances, his release is unwarranted based on the 18 U.S.C. § 3553(a) factors. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release); *United States v. Lugo*, --- F. App'x ----, 2021 WL 81717, at *1 (3d Cir. Jan. 11, 2021) (per curiam) (same). He earned his sentence by pushing significant amounts of methamphetamine into the community, while in possession of a

firearm with an obliterated serial number, shortly after serving long prison sentences for twice conspiring to manufacture methamphetamine and after prior convictions for possessing methamphetamine. These crimes capped off an eighteen-year run of convictions for numerous offenses, including violent ones. Right after he was taken into custody for his offense he was again caught in possession of drugs. Iglesias's track record demonstrates a complete disregard for the law and a refusal to meaningfully learn from his mistakes even when they result in long-term imprisonment. To reward this by releasing him a little more than halfway into his most recent sentence would fail to promote respect for the law or provide just punishment for his actions. *See* 18 U.S.C. § 3553(a)(2)(A). His release would also be inconsistent with the seriousness of his crimes. *See id.*

### iii

Iglesias's release is also unjustified because despite his claims to the contrary, he remains a danger to the community. *See id.* at §§ 3142(g), 3553(a)(2)(C). His rehabilitative efforts and improved behavior in prison are commendable, but they do not enable the Court to disregard or minimize his past. Aging has had no demonstrated effect on Iglesias's propensity to recidivate—prior to his incarceration, his wrongdoing escalated and "accelerated with age." (Gov't Resp. 13.) Moreover, his family support has not historically hindered his criminal activity and supervised release will not sufficiently protect the public from future crimes he may commit.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
